MAXIMILIANO FLORES ORTIZ, ET AL., Plaintiffs and Appellees, *v.* SANTIAGO RODRÍGUEZ, Defendant and Appellant.

No. 10918. Argued November 2, 1953.—Decided December 28, 1954.

*E. Tristani, Jr.,* for appellant. *Julio Viera Morales* for appellees.

## JUDGMENT

The judgment appealed from will be modified so as to join Antonio Flores, in substitution of his natural mother Justina Flores, as plaintiff herein, in view of the evidence introduced, as well as Sixto, Ramón, and María Bermúdez,

the natural half brothers and sister of the plaintiffs, in one-half of the inheritance which would correspond to Nicolás Flores Cintrón, and with respect to the legitimate brothers and sister with whom they concur, in one-half of the share corresponding to each one of the legitimate children who receive no additional portion of the inheritance, provided there is sufficient within the free third, which shall be computed after deducting the funeral expenses pursuant to the Act of March 9, 1905, Compilation of the Revised Statutes and Codes of Puerto Rico 721–722 (1911 ed.), and, as thus modified, the judgment will be affirmed.

It was so decreed and ordered by the Court as witness the signature of the Chief Justice.

A. CECIL SNYDER,
*Chief Justice*

I certify:

IGNACIO RIVERA,
*Secretary.*

Opinion of MR. JUSTICE BELAVAL with whom MR. CHIEF JUSTICE SNYDER and MR. JUSTICE NEGRÓN FERNÁNDEZ concur.

This is an action of revendication, where the plaintiffs and appellees alleged in the former District Court of Ponce that their ancestors, Nicolás Flores Cintrón and Ceferina Ortiz Flores, were husband and wife and the owners of a 21-cuerda property located at Barrio Villalba Abajo, of the Municipality of Villalba, Puerto Rico; that Nicolás Flores Cintrón and Ceferina Ortiz Flores died intestate, their closest relatives being their legitimate children, Ramón, Genaro, Felícita, Justina and Maximiliano Flores Ortiz; that subsequently two of the heirs died: Genaro, without leaving descendants, whereby his brothers and sister inherited from him, and Justina, who according to the averments had no descendants, but according to the evidence had a natural son named Antonio, whom his uncles recognized at the trial as the son of said Justina, with a right to inherit his mother's share; that

defendant and appellant Santiago Rodríguez was unlawfully occupying the property owned by the heirs, by virtue of an award entered in his favor by the former Municipal Court of Juana Díaz, in suit No. 1483 which he filed against the heirs of Nicolás Flores Cintrón, which were said to be composed of his widow Ceferina Ortiz Flores and his son Maximiliano Flores Ortiz, which award was set aside when defendant-appellant himself moved for and obtained from the court permission to file an amended complaint including new parties defendant, no judicial action being taken on said amended complaint; that defendant-appellant's possession has been in bad faith, whereby plaintiffs and appellees are entitled to certain compensation.

Defendant-appellant answered denying the facts and alleging the following as special defenses: (1) that in addition to the plaintiffs, and prior to his marriage, Nicolás Flores had had three natural children by Rosa Bermúdez, named Ramón, María and Sixto Bermúdez; that the plaintiff-heirs had given to each of their natural half-brothers and sister 1.5 cuerdas which had been acquired by the defendant and appellant; (2) that of the 21 cuerdas making up the property, the ancestors Nicolás Flores and his wife Ceferina Ortiz had sold to Ramón Antonio Cintrón seven cuerdas, which were acquired in turn by Cosme Irizarry by purchase, the latter having filed a dominion title proceeding by virtue of which he possessed them as owner; (3) that subsequent to all the afore-mentioned transactions, the entire 21-cuerda property had been sold at a tax sale, and adjudicated to defendant-appellant, whereby the corresponding certificate of purchase was issued to him by the Internal Revenue Collector of Villalba, it being by virtue of said tax sale that defendant-appellant possesses the property with the exception of the seven cuerdas possessed by Cosme Irizarry.

As may be seen, defendant-appellant himself discarded in his answer the theory that he possessed title by virtue of the judgment of the former Municipal Court of Juana Díaz

and alleged that his title issued from a tax sale executed by the Internal Revenue Collector of Villalba, holding the same theory when he testified at the trial (tr. 47 and tr. 50).

As a question of law, the trial judge concluded that the possible award in favor of the defendant and appellant in the civil action, before the former Municipal Court of Juana Díaz, was null and void and that the award in favor of defendant-appellant in the tax sale was equally null and void. As proof that the conclusion of nullity is correct, it is enough to state that the predecessor of the heirs of Nicolás Flores Ortiz died on January 6, 1928, and the notice of the tax sale was served on the same Nicolás Flores Ortiz on June, 1935, which shows that the said second title is inescapably void.

Having reached this conclusion, the trial judge rendered judgment sustaining the complaint as to the revendication and dismissed it as to the possible return of the fruits, but only as to the shares of Maximiliano, Ramón and Felícita, amounting each to one fourth, from a total of 14 cuerdas which remain after deducting the seven cuerdas owned by Cosme Irizarry.

On appeal, defendant-appellant assigns the following errors:

1. The court erred in not dismissing the complaint for nonjoinder of all the heirs or parties interested in the succession as plaintiffs or defendants, and in consenting to the noninclusion of the names of each and every one of the heirs or parties interested in the succession in the title of the action;

2. The court erred in not demanding specific and exact proof and allegations as to the identity, description, and area of the property to which plaintiffs are entitled, without correctly identifying the 14 cuerdas of which, the court held, three-fourths belonged to the plaintiffs;

3. The court erred in rendering judgment which is neither based on nor supported by the averments of the complaint or by plaintiffs' evidence;

4. The court erred in allowing the plaintiffs to introduce new evidence after the case had been submitted and closed;

5. The court erred in not holding that plaintiff's action had prescribed;

6. The court erred in ordering defendant to pay costs and attorney's fees. We shall now proceed to analyze those errors in the order in which they have been assigned.

1. As to the first error regarding the joinder of plaintiffs, it is true that only Maximiliano, Ramón and Felícita Flores appear as plaintiffs and that Antonio Flores, natural son of Justina Flores, and the natural half brothers and sister of the plaintiffs, Ramón, Sixto and María Bermúdez, did not appear. The defendant-appellant expressly alleged in the answer the existence of the natural son of Justina, named Antonio, and the existence of the natural half brothers and sister, and it appears from the evidence that the plaintiffs-appellees not only failed to contradict defendant-appellant's averments and proof to that respect, but that they expressly accepted that Antonio Flores was the natural son of Justina, acknowledging his right to his share in the hereditary estate, and that Sixto, Ramón and María Bermúdez were the natural children of their father, Nicolás Flores Cintrón, had by Rosa Bermúdez. Therefore the evidence showed the actual status of all the heirs of Nicolás Pérez Cintrón and of the heirs of Ceferina Ortiz Flores.

The entirety of a hereditary estate constitutes a community of property of a universal nature, when it covers the entire estate: "It is a fact that when at the opening of the probate proceedings or at the initial intestate proceeding two or more heirs appear, each one of them is an undivided owner of the total estate in existence in the proportion to the share or part belonging to him, producing, therefore, among the participants a community of property while the inheritance remains undivided. Studying this case of community of property a noted Italian jurist wisely holds that said community, incidental to the co-heirs, because as to them it

arises involuntarily, is actually essential, inasmuch as without that previous state of coownership, the division in its day might not acquire reality, thereby concluding that the partition of the inheritance is a true integration of the hereditary condominium. We also believe that, far from being a fiction of law, the hereditary community, as Douvergier holds, responds to the universal character correctly attributed to the succession, for in the hereditary community, the heir represents the juridical personality of the ancestor acting over the entire mass of property and rights until the partition proceedings put an end to the entirety. And nothing can be conceived with more color of fact than such necessary community, which arises at the precise moment when the coheirs assume the entire representation of the person of the decedent over the universality of his property, rights and actions, active as well as passive." 3 Manresa 404, (6th ed. corrected and enlarged of the Editorial Reus), (1934).

It being the case of a compulsory community of property and rights, any one of the heirs or part thereof may appear at the trial to defend his common rights, and if he prevails, his victory is for the benefit of all the co-owners. Commenting on § 392 of the Civil Code of Spain, equivalent to § 326 of the Civil Code of Puerto Rico, Manresa says: "Above all, each co-owner may institute, by reason of the ownership rights attributed to him over the thing or right held in common, an action of revendication, as the proper remedy to claim, not only against the unlawful possessor, but also against the wrongful occupant, provided he does so for the benefit of all the other co-owners . . . It must likewise be borne in mind that the judgment rendered in favor of a co-owner, against a third party extraneous to the community, benefits all the other co-owners, without their being prejudiced by an adverse or opposite judgment (Judgments of May 27, 1874, April 6, 1896, October 27, 1900, May 30, 1906, June 5, 1918 and April 4, 1921), which doctrine must be kept in mind in a matter of such importance as revendication of com-

mon property when the action is particularly used by one of the co-owners and not by all of them jointly:" 3 Manresa 408 and 409 that is, a co-owner may file suit by himself and his judicial action is for the benefit to the others; but if a person extraneous to the community of property or a co-owner isolatedly files suit against the hereditary community, he has to include as a defendant and summon as a necessary party each co-owner of all or of the rest of the co-owners constituting the community of property in order to bind each one individually to the consequences of the judgment and to cause the entire property held in common to answer for the judgment rendered against all or part of the co-owners. In the instant case three of the co-owners filed suit praying for the return of the entire property. The evidence showed who constituted the rest of the heirs, the condition of legitimacy or the status of natural children of each one of the members of the estate, as well as those who appeared by their own right as direct heirs or in the representation of some direct heirs already deceased. The judicial action filed by three co-owners benefits all of those who, according to the evidence, were the real members of the estate.

2. As to the second assignment, with respect to the failure to describe the part of the inheritance awarded in the judgment, it being the case of an undivided property, where it is possible to determine the aliquot portion corresponding to each party, we do not see the need of allocating separately the exact share of each plaintiff. The property as a whole is described and the boundaries thereof fixed by the evidence, (tr. 9). The interested parties may, either by agreement or by subsequent judicial division of the community of property, determine what parcel of land corresponds to each co-owner.

3. As to the third assignment to the effect that the judgment is not based or supported by the averments in the complaint or by plaintiff's evidence, the evidence is sufficient to support the findings of fact and the pleadings are thereby amended to conform to the evidence, inasmuch as defendant-

appellant himself was the one who alleged the opposite and did not object when plaintiff as well as defendant introduced evidence at the hearing with respect to some particulars not included in the pleadings.

4. As to the fourth assignment to the effect that the court allowed plaintiffs to introduce new evidence after the case had been submitted and closed, we do not believe that it constitutes error. The only evidence introduced after the case was closed, with leave of the court and after a hearing to that effect, was a death certificate of Nicolás Flores Cintrón. As a matter of fact his death had been already proved by oral evidence during the trial (tr. 22); the fact had not been denied in defendant's answer, but contrariwise, all his special defenses admitted the fact of the death and his acquisition of some of the shares of the natural heirs, the death certificate introduced by the plaintiffs therefore being corroborative evidence of a fact already proven by oral evidence, without defendant's objection and admitted by defendant himself in his answer.

5. As to the fifth assignment to the effect that the court erred in not holding that plaintiff's action had prescribed, defendant and appellant mistakes extinctive prescription for acquisitive prescription. What he meant to establish as a defense was that the defendant-appellant had acquired by ordinary prescription, through possession for over ten years in good faith and just title, the property object of revendication. The action of revendication never prescribes, although it is subject to the defense of acquisitive prescription, either ordinary, extraordinary or immemorial, which the possessor might present.

Inasmuch as he acquired by virtue of a certificate of purchase of personal property, issued by the Collector of Internal Revenue of Villalba in June, 1935, and since this action was filed on December 10, 1947, he could only prove the possession for 12 years, more or less, and hence, possession

by ordinary acquisitive prescription of ten years, in good faith and with just title.

An inspection of the testimony given at the trial clearly shows that the defendant-appellant, who happens to be a cousin of the plaintiffs-appellees and lives in the same farm where the ancestor and his heirs lived, acquired a 21-cuerda property by virtue of a tax sale for the collection of taxes amounting to $31.23. The notice of the distress proceeding, by means of attachment of the property in the Registry of Property of Ponce, was served on March 5, 1935, on a so-called Enrique Flores, a relative of Nicolás Flores Cintrón, who is not one of the heirs of Nicolás Flores Cintrón, and has no standing at law to accept the notice. After the property was auctioned off in June, 1935, notice of the tax sale, and consequently the right of redemption within a year, was given to the deceased Nicolás Flores Cintrón (tr. 92) who had died on January 6, 1928. One might think that an employee of the Treasury, in charge of serving such notices, might make the mistake of serving the notice of distress on a person without interest in the adjudication of the property, and even notify the act of the tax sale and the issuance of the corresponding purchase certificate to a different person, believing that he was the ancestor, but what we can not conceive is that the defendant and appellant did not know of the death of his relative Nicolás Flores Cintrón, after having filed suit against his heirs in the Municipal Court of Juana Díaz on August 4, 1931, or that he did not know his heirs, who happen to be his relatives and who also live in the same property occupied by him. Therefore, we are not surprised that the trial judge did not believe that this possession was in good faith and with just title, which would be his only defense against the action of revendication.

As to the sixth error regarding the imposition of costs and attorney's fees, we find nothing in the record to convince us that the trial court erred in imposing costs and attorney's fees. We consider that defendant-appellant's obstinacy is all

too clear. Likewise, under Act No. 411 of May 11, 1951, the imposition of costs on the defeated party is mandatory.

The judgment appealed from will be modified so as to join Antonio Flores, in substitution of his natural mother Justina Flores, as plaintiff herein, in view of the evidence introduced, as well as Sixto, Ramón, and María Bermúdez, the natural half brothers and sister of the plaintiffs, in one-half of the inheritance which would correspond to Nicolás Flores Cintrón, and with respect to the legitimate brothers and sister with whom they concur, in one-half of the share corresponding to each one of the legitimate children who receive no additional portion of the inheritance, provided there is sufficient within the free third, which shall be computed after deducting the funeral expenses pursuant to the Act of March 9, 1905, Compilation of the Revised Statutes and Codes of Puerto Rico 721–722 (1911 ed.)

Mr. Justice Marrero, Mr. Justice Sifre, and Mr. Justice Pérez Pimentel concur in the result.